**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
      -against-                     :   No. 19 Cr. 2 (JFK)
                                    :
HECTOR BATISTA,                     :   **OPINION & ORDER**
                                    :
                      Defendant.    :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/16/2020

APPEARANCES

FOR DEFENDANT HECTOR BATISTA:
    Theodore S. Green
    GREEN & WILLSTATTER

FOR THE UNITED STATES OF AMERICA:
    Jeffrey C. Coffman
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Hector Batista for his immediate release from the Orange County Correctional Facility ("the Orange County Jail" or "OCJ"), where Batista is currently incarcerated while he awaits transfer to a Federal Bureau of Prisons ("BOP") facility, due to Batista's underlying physical and mental health issues and the Coronavirus, COVID-19 ("COVID-19"). Batista brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government opposes Batista's request on the merits and argues that he is not entitled to compassionate release because Batista poses a danger to the safety of the community, he fails to set forth extraordinary and compelling

1

reasons to support his request, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to the terms of Batista's incarceration.

For the reasons set forth below, Batista's motion is DENIED.

**I. Background**

On December 4, 2018, Batista, who was 35 years old at the time, was arrested and charged with one count of conspiracy to distribute and possess with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841 and 846.  (Sealed Complaint, ECF No. 2.)  Batista's arrest followed seven earlier adult criminal convictions, three of which involved the sale or possession of a controlled substance, and the most recent of which, in February 2012, saw Batista sentenced to 84 months' imprisonment for his role in a conspiracy to distribute heroin in Middletown, New York.  (Presentence Investigation Report ("PSR") at 7–10, ECF No. 42.)  At the time of Batista's arrest on the charges in this case—which once again concerned a conspiracy to distribute a controlled substance in Middletown, New York—Batista was in his second year of a five-year term of supervised release that was imposed following Batista's 2012 conviction for conspiracy to distribute heroin.  (Id. at 9–10.)

On September 10, 2019, Batista appeared before the Court and pleaded guilty as charged pursuant to a non-binding plea

2

agreement he had signed with the Government.  (Id. ¶ 3; Plea Tr. at 17:2-13, ECF No. 40.)  Batista's sentencing occurred on December 17, 2019.  During sentencing on this case, Batista pleaded guilty to violating the terms of his supervised release on the 2012 sentence by distributing and conspiring to distribute narcotics.  (Sent. Tr. at 4:23-5:11, ECF No. 51.) Turning first to sentencing on the charges in this case, the Court determined that Batista "was an organizer, a supervisor, and a leader of this conspiracy," which involved the sale of more than 280 grams of crack cocaine, but less than 840 grams. (Id. at 18:5-7.)  Accordingly, the Court found a Guidelines incarceration range of 121 months to 151 months, with a mandatory minimum of 120 months.  (Id. at 19:9-12.)  The Court sentenced Batista to the mandatory minimum, "a guideline variance of one month, which [wa]s all that [Batista was] permitted to request."  (Id. at 19:16-22.)   Next, the Court sentenced Batista to 12 consecutive months' incarceration for his violation of supervised release "because it's separate criminal activity from what he pleaded guilty to."  (Id. at 21:9-22.)  To date, Batista has served approximately 1.5 years of his combined 11-year sentence.  With credit for good time, the BOP estimates that he will be released on April 18, 2028. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 16, 2020).

On May 7, 2020, the Court received a letter from Batista in which he requested his immediate release from the OCJ due to the COVID-19 pandemic.  The Court forwarded Batista's letter to his counsel who filed a supplemental motion on his behalf on May 26, 2020.  (Letter from Theodore S. Green to Hon. John F. Keenan (May 26, 2020) ("Def.'s Letter Mot."), ECF No. 58.)  Batista (through his counsel) requested the Court grant his application for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), on the grounds that the COVID-19 pandemic and Batista's history of asthma, hypertension, and certain emotional disorders constitute "extraordinary and compelling reasons" to reduce his sentence.  (Id. at 4–5.)  In the alternative, Batista requested that the Court recommend to the BOP and OCJ that he be furloughed pursuant to 18 U.S.C. § 3622, or that he be provided meaningful mental health counseling and treatment while in the BOP's or OCJ's custody.  (Id. at 5.)

On June 2, 2020, the Government filed its opposition. (Letter from Jeffrey C. Coffman, Assistant United States Attorney, to Hon. John F. Keenan (June 2, 2020) ("Gov't's Opp'n"), ECF No. 60.)  The Government argued that the BOP and OCJ have adequate procedures in place to mitigate the spread of COVID-19 and urged the Court to reject Batista's request which, it argued, failed to set forth the requisite "extraordinary and compelling reasons" to support immediate release.  (Id. at 4–

4

10.)  The Government further argued that Batista poses a danger to the safety of the community and the factors set forth in 18 U.S.C. § 3553(a) strongly counsel against any reduction in his term of imprisonment.  (Id. at 10–11.)  The Government did not oppose Batista's request for a recommendation from the Court to the BOP and OCJ regarding additional mental health services and treatment for Batista.  (Id. at 2 n.1.)

Batista (through his counsel) filed a reply on June 8, 2020, to reiterate that he was not receiving adequate mental health services.  (Letter from Theodore S. Green to Hon. John F. Keenan (June 8, 2020), ECF No. 61.)

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would

5

undermine the goals of the original sentence.'" <u>United States v. Daugerdas</u>, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting <u>United States v. Ebbers</u>, --- F. Supp. 3d ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)).

The relevant policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release is found at § 1B1.13 of the Sentencing Guidelines. Application Note 1 to § 1B1.13 describes four potentially extraordinary and compelling reasons for compassionate release: (1) the defendant has a terminal medical condition or a serious health condition that substantially diminishes his ability to provide self-care; (2) the defendant is at least 65 years old and has served 75% of his sentence; (3) family circumstances; and (4) an extraordinary and compelling reason other than or in combination with one of the above. U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(1)(A) & cmt. n.1(A)-(D) (U.S. Sentencing Comm'n 2018). The defendant, however, must not be "a danger to the safety of any other person or to the community," <u>id.</u> § 1B1.13(2), and "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t); <u>see also</u> U.S.S.G. § 1B1.13 cmt. n.3.

**B.  Analysis**

The Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 16, 2020); see also United States v. Park, --- F. Supp. 3d ---, No. 16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).

Nevertheless, after considering the 3553(a) factors, including the nature and circumstances of Batista's offense and his history and characteristics, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence imposed and the kinds of sentences available, id. § 3553(a)(2)-(3), the Court finds that reducing Batista's term of incarceration or recommending that he be furloughed would not be "consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," id. § 3582(c)(1)(A).  Accordingly, Batista's request for early release must be denied.

First, the Court cannot find that Batista "is not a danger to the safety of any other person or to the community," as the Court must before it may modify Batista's term of imprisonment. U.S.S.G. § 1B1.13(2). Here, the underlying conduct that led to Batista's incarceration gravely endangered the community and reflects an individual who is accustomed to distributing controlled and highly addictive substances in his community. At only 36 years old, Batista has a lengthy criminal record, including his earlier conviction for conspiring to distribute heroin—for which he recently served an 84-month term of imprisonment—and his conviction in this case as the organizer, supervisor, and leader of a conspiracy to distribute crack cocaine—yet another serious pattern of criminal activity that Batista voluntarily undertook shortly after his release for distributing heroin in the same community.

Second, Batista has failed to articulate an extraordinary and compelling reason why his sentence should be reduced. The foundation of Batista's motion is the generalized threat that COVID-19 poses to incarcerated individuals with asthma, hypertension, and emotional disorders. According to the Centers for Disease Control and Prevention ("the CDC"), adults aged 65 years or older and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People Who Are at Higher Risk for Severe

8

Illness, Ctrs. for Disease Control & Prevention, supra. Here, however, Batista's age and his medical conditions are not severe enough to warrant compassionate release. Batista is 36, significantly younger than the CDC's high-risk cutoff age. See id.; see also, e.g., United States v. Skelos, No. 15 Cr. 317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) (finding that a 37 year old defendant "faces a relatively low risk of hospitalization or death from COVID-19") (collecting sources). While the CDC has listed "moderate to severe asthma" as a primary risk factor for COVID-19, Batista's asthma cannot be characterized as such, nor as a serious health condition that substantially diminishes his ability to provide self-care. According to Batista's medical records, on December 12, 2019, Batista reported that his asthma had resolved itself more than six years ago and he did not wish to receive an asthma inhaler, (Ex. A to Def.'s Letter Mot. at 10), and on March 25, 2020, Batista reported that in the month prior he had not suffered an asthma attack, used an inhaler, or awakened with asthma symptoms, (id. at 7). Likewise, Batista's history of hypertension does not rise to the level of a "serious heart condition," which the CDC identifies as "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, [or] pulmonary hypertension." See Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention,

9

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (last visited June 16, 2020) (emphasis added).  Finally, Batista does not suffer from other COVID-19 risk factors looked to by courts, such as diabetes or immunocompromization. See, e.g., Park, 2020 WL 1970603, at *1 (granting release to 44-year old defendant with a documented history of respiratory issues, including severe asthma and immune-compromising diseases); United States v. Williams, --- F. Supp. 3d ---, No. 17 Cr. 121 (VAB), 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (granting release to defendant with chronic asthma, hypertension, diabetes, and high cholesterol); United States v. Smith, --- F. Supp. 3d ---, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *1 (S.D.N.Y. Apr. 13, 2020) (granting release to 62-year old defendant who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see, e.g., United States v. Aronshtein, No. 11 Cr. 121 (GBD), 2020 WL 2836770, at *2 (S.D.N.Y. June 1, 2020) (denying release to defendant with asthma); United States v. Gileno, --- F. Supp. 3d ---, No. 19 Cr. 161 (VAB), 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (denying release to defendant with anxiety, high blood pressure, high cholesterol, asthma, and allergies).

Third, the BOP and OCJ have implemented comprehensive and multi-point plans to combat the introduction and spread of

10

COVID-19 within their facilities.  (Gov't's Opp'n at 4–7 (detailing the steps the BOP and OCJ are taking in response to COVID-19, including routine cleanings; strict quarantine and isolation protocols; restrictions on inmate transfers and visitations; limited group gatherings; distribution of masks to inmates and employees; and heightened screening procedures).)  Indeed, as of June 1, 2020, the OCJ, where Batista is currently being held, reported that zero inmates have tested positive for the virus or are in quarantine.  (Id. at 4.)

Finally, and decisive here, even if Batista's health issues and the COVID-19 pandemic constituted "extraordinary and compelling reasons" to reduce his sentence, application of the § 3553(a) sentencing factors outweighs any such reduction.  The factors that weigh in Batista's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a).  For the reasons stated in detail at Batista's sentencing, which are incorporated by reference here, the Court finds that modifying Batista's term of imprisonment, when he has served little more than 10 percent of

11

his sentence, would disserve the above important sentencing factors. See, e.g., United States v. Mascuzzio, No. 16 Cr. 576 (JFK), 2020 WL 3050549, at *4 (S.D.N.Y. June 8, 2020) (denying compassionate release to nonviolent 40-year old defendant who suffered from asthma and had served approximately 33 months of his original 84-month sentence).

### III. Conclusion

For the reasons set forth above, Batista's motion for reduction in sentence or a recommendation that he be furloughed is DENIED.

It is FURTHER ORDERED that, the Government having no objection to the request, the Court hereby RECOMMENDS that the Federal Bureau of Prisons and/or the Orange County Jail assess Batista's mental health and provide him with professional counseling or other mental health services as appropriate.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 58.

**SO ORDERED.**

Dated:  New York, New York
        June 16, 2020

_John F. Keenan_
John F. Keenan
United States District Judge